# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **POINDEXTER, ET AL** | * | **CIVIL ACTION NO. 04-1035** |
| **Versus** | * | **JUDGE JAMES** |
| **UNITED STATES OF AMERICA, ET AL** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are several Motions for Summary Judgment (Docs. #11, 27, 28, 29) filed by Defendants, Board of Commissioners of the Tensas Basin Levee District ("Levee District") and the United States of America, on behalf of U.S. Army Corps of Engineers ("Government"). For reasons stated below, it is recommended that the motions filed at Document No. 28 be **DENIED**, but that the motions filed at Document Nos. 11, 27, and 29 be **GRANTED**, and this matter dismissed in its entirety with prejudice.

## Factual and Procedural History

Plaintiffs, Marshall Wayne Poindexter ("Marshall"), Brandon Wayne Poindexter ("Brandon") and Deborah M. Poindexter ("Deborah"), the adult sons and surviving spouse of Thomas Wayne Poindexter ("Thomas"), filed this wrongful death and survival action following a tragic accident which occurred on May 11, 2003, resulting in Thomas's death by drowning. The underlying facts are as follows:

Thomas and his brother-in-law, Oliver A. Douglas ("Oliver"), were jug fishing in Big Creek after midnight on May 10, 2003. At the point in question in this suit, Big Creek contains a

1

water-level control structure called a weir. The weir consists of a wall of corrugated steel that runs from one bank of the creek to the other and down into the creek bed. On the upstream side of this corrugated wall is a layer of riprap, a large collection of rocks adjacent to the weir that adds structural support and reduces erosion. For added structural support, on the downstream side of the corrugated wall is a horizontal steel brace, also known as a wale, that runs the length of the weir and is located approximately thirteen inches below the top edge of the weir. Looking at the weir from above, this wale, which is flush against the weir's corrugated main wall, creates multiple openings as it runs the length of weir.

After one of their jugs drifted too close to the weir, Thomas and Oliver approached the weir to retrieve it. In so doing, their boat contacted the riprap; the motor stalled; and the boat became caught on the rocks. Thomas and Oliver exited the boat and, while standing on top of the rocks, attempted to push the boat away from the weir. As the boat broke free and went over the weir, Thomas slipped, was knocked over by the boat, and/or lost his balance and fell, disappearing from sight over the edge of the weir. It was later determined that he had fallen in such a way as to fracture his right leg, which became entangled between the wale and the weir, trapping him under water and causing his death by drowning.

Plaintiffs originally filed suit against the Levee District in the Parish of Richland, Fifth Judicial District Court and against the Government in this Court. The Levee District filed a Third Party Demand against the Government in State Court and the Government Removed the State Court action to this Court. The actions were then consolidated.

Plaintiffs claim that both Defendants are liable for negligence as follows:

(A) Failure to exercise reasonable and ordinary care for the safety of persons in or near

| | |
|---|---|
| | the weir or structure by not keeping it in a reasonably safe condition; |
| (B) | Allowing a brace to be positioned such that it creates a dangerous condition to an unsuspecting person; |
| (C) | Failure to properly inspect and maintain the weir and to correct the dangerous condition as set forth in Subsection (B), above; |
| (D) | Failure to install a rail or other device that would prevent a person from going over the weir; |
| (E) | Failure to advise or warn persons of a dangerous condition; |
| (F) | Failure to provide a safety cable to prevent contact with the weir; |
| (G) | Failure to exercise reasonable care, caution, and observation; |
| (H) | Failure to take adequate precaution under the circumstances; and, |
| (I) | Failure to simply cover the opening between the brace and the wall.[1] |

The Levee District moves for Summary Judgment on the grounds that, for various reasons set out more fully below, it has no liability (Doc. # 11). The Government moves for Summary Judgment on the grounds that it is immune under the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. §2671-2680 (Doc. # 27), or immune from liability pursuant to the Flood Control Act of 1927, 33 U.S.C. §702c (Doc. # 28), or because Plaintiffs have not fulfilled their burden of establishing the elements of their claims (Doc. # 29). The Government also claims it is entitled to a Declaration of Indemnification from the Levee District (Doc. # 28). Plaintiffs oppose all the Motions for Summary Judgment. The Government opposes the Levee District's Motion for Summary Judgment, and the Levee District opposes the Government's Motions for Summary Judgment related to the discretionary function exception to the Federal Tort Claims Act, immunity pursuant to the Flood Control Act, and indemnification from the Levee District.

## LAW AND ANALYSIS

---

[1] It should be noted that the plaintiffs have supplied no evidence to support a claim for liability under allegations (D) or (F). As for allegations (A), (C),and (G) , it is undisputed that annual inspections of the weirs were performed and that any change in the weir's condition did not contribute to the accident in question. The plaintiff's argument that such inspections were not "safety" inspections fails to include any factual basis for such a claim.

Summary judgment is appropriate when the evidence before the Court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56(b).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1355-56 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

### **Lack of Proof of Elements of Claim**

The Levee District and the Government have filed similar Motions for Summary Judgment based on lack of duty, no breach of duty, and lack of actual or constructive notice of any defect (Docs # 11 & 29), and they will therefore be addressed together.

The Levee District's motion (Doc. # 11) contends that it has no liability in this action for the following reasons:

(1) The Levee District had no ownership of or *garde* over Big Creek;
(2) The weir did not pose an unreasonable risk of harm;
(3) The Levee District did not design, construct or alter the weir;
(4) The Levee District had no duty to maintain or inspect the weir;
(5) The Levee District had no actual or constructive knowledge of any alleged weir defect, nor was there any negligent failure to remedy any alleged defect; and,
(6) The alleged defect was not a cause-in-fact of the damages complained of; and as the Levee District had no *garde* over the weirs, neither was it a cause-in-fact of the damages complained of in this matter.

The Government's Motion for Summary Judgment (Doc. # 29) alleges that Plaintiffs have not provided competent summary judgment evidence that establishes the weir was unreasonably dangerous or that the Government had actual or constructive knowledge of the risk encountered by the plaintiffs' decedent.

## **Negligence**

An individual is responsible for the damage caused by his own act and by things in his custody. La. Civ. Code art. 2317. The owner or custodian of a thing is answerable for damage caused by its defect only upon a showing that he knew or, in the exercise of reasonable care, should have known of the defect which caused the damage, that the damage could have been prevented by the use of reasonable care, and that he failed to exercise such care. La. Civ. Code art. 2317.1. "The plaintiff must prove that the thing was in the defendant's custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused the damage and that the defendant knew or should have known of the defect." *Brown v. Williams*, 850 So.2d 1116, 1120 (La.App. 2 Cir., 2003).

5

## Custody/Ownership

The Levee District contends that the Government, as the builder of the weir, owns and maintains the weir and that the State of Louisiana only owns the river bottom. The Levee District "exerted no right of direction, control, dominion or ownership over the weir in Big Creek. The activities of the Levee District are limited to removal of drift wood, minor silt bars, and vegetation control on the creek bank." (Memo in Support of MSJ Doc. # 11). John Calvin Stringer ("Stringer"), Executive Director of the Levee District, claims that the Corps of Engineers ("Corps") had confirmed in writing to the Levee District that the Corps has responsibility for maintaining the weirs on Big Creek. (Stringer Aff. Exhibit B to Doc. #11). Stringer further states that there is a letter from Area Engineer Gerald R. McDonald dated January 14, 1988, to the Levee District that confirms that it is the Corps' responsibility to maintain the weirs on the Boeuf River, of which Big Creek is a part. (Stringer Aff. Exhibit B to Doc. #11).

The Government opposes the Levee District's contention that the Government owns and maintains the weirs. The Government claims that the Levee District has ownership and maintenance responsibilities over the weir. In an Assurance dated October 11, 1956, and signed by Roy Snider, then President of the Board of Levee Commissioners of the Tensas Basin Levee District, the Levee District granted assurances to the United States that the Levee District would "accept title to the lands or rights-of-way which may be required for the project; that it agrees to maintain the completed works lying within, or partly within, the Tensas Basin Levee District ... [and] that it will hold and save harmless the United States of America from all damages resulting from the construction, maintenance, and operation of the project." (Opp. to MSJ Doc. # 22

6

Exhibit A). In addition, the Government has provided a letter dated February 24, 1993, sent from Stephenson W. Page, Colonel, Corps of Engineers to Honorable Jimmy Don Hudson, President, Tensas Basin Levee Board that informs the Board that it is the Corps' opinion that the Levee Board's liability could be reduced by posting proper signs at each weir to warn of a possible hazard. This letter reminds the Levee District of the assurances to hold the Government harmless and that the obligation to maintain signs at the weirs is the Levee District's and not the Government's. (Opp. to MSJ Doc. # 22 Exhibit C).

The plaintiffs also oppose the Levee District's Motion for Summary Judgment (Doc. # 21). Plaintiffs point out that the interrogatories and exhibits submitted by Defendants establish that "there is a major dispute of material fact between co-defendants ... regarding the ownership, maintenance and repair responsibility for the weirs on Big Creek." (Plaintiff's Opp. Doc. # 21). This Court agrees. The first element needed to establish a negligence action is custody or *garde*. *See La. Civ. Code art. 2317*; *La. Civ. Code art. 2317.1*; *Brown* at 1120.

The Louisiana Supreme Court, in *Dupree v. City of New Orleans*, 765 So.2d 1002, *1009, 1999-3651 (La. 8/31/00 (La.,2000), analyzed the process of determining *garde* as follows:

> Determining who has the custody or garde of the thing is a fact driven determination. *Doughty v. Insured Lloyds Ins. Co.,* 576 So.2d 461, 464 (La.1991). Moreover, because Article 2317 imposes liability upon persons for things in their custody or garde, a principle much broader than ownership, it is clear that more than one party may have custody or garde of a thing under La. Civ.Code art. 2317, determined by an examination of the parties' actions and relationships to the thing causing the injury. *King,* 543 So.2d at 1329-30 (discussing dual garde and noting that under appropriate circumstances the custody or garde of a thing may be divided between two persons); **8 *Ehrman v. Holiday Inns, Inc.,* 94-0312 (La.App. 4 Cir. 3/29/95), 653 So.2d 732, 738 (stating that "[m]ore than one party

7

may have custody and control or garde under La.C.C. 2317" ); *Thumfart,* 613 So.2d at 289-90 & n. 4 (concluding that dual garde may exist under La. Civ.Code art. 2317 and liability of the nonowner is determined by his own actions and relationship to the thing causing the injuries); *see also* Maraist & Galligan, Louisiana Tort Law § 14-5, at 341 & n.51 (discussing dual garde). The person who has custody or garde of a thing is he who has the legal duty to prevent its vice or defect from harming another. *King,* 543 So.2d at 1328.

The fact that the Levee Board may have had responsibility to maintain the weir does not mean that the Government did not, and there is evidence which could lead a trier of fact to conclude that one or both had *garde* of the weir. Thus, there are genuine issues of material fact on the issue of ownership and maintenance responsibilities for the weir such that summary judgment on this basis would be inappropriate.

### Defect/Notice

The Levee District also argues that even if it did own the weir, the weir is not defective. In addition, the Levee District argues that if the weir is found to be defective, then the Levee District had no knowledge of the defect and therefore, is not liable for damages. (Memo in Supp. of MSJ Doc. # 11).

The Government also asserts that the weirs do not pose an unreasonable risk of harm to the users of Big Creek and that there is no evidence that establishes that the Government knew or should have known of any defect. (Memo in Supp. of MSJ Doc. # 29). "Negligence generally is found to exist when a tortfeasor knows or should have known that his behavior has created unreasonable risk, which is reasonably foreseeable to damage another, yet the tortfeasor does not alter his behavior to avoid the harm." *Spencer v. Red River Lodging*, 865 So.2d 337, 341 (La.App. 2 Cir.,2004). "Whether a particular risk of harm is reasonable cannot be determined in a vacuum....Thus, the determination of whether a particular risk of harm is reasonable is a matter

8

wed to the facts of the case." *Celestine v. Union Oil Co. of California*, 652 So.2d 1299, 1304 (La. 1995).

In this case, there is no evidence that the tragedy leading to the death of Thomas Poindexter was anything other than a freak accident. The record shows that the primary risk encountered by persons in connection with the weir is the danger of being swept over the weir and drowned by the undertow or the turbulent waters created thereby. There is no indication that the risk of falling straight off of the front of the weir in such a way as to become entrapped in the wale was at all great, although the outcome of the accident in this case certainly shows that the likelihood and degree of injury should such an event occur was high.

Plaintiffs argue that the defendants were on notice of the dangerous condition presented by the weir because the Corps of Engineers originally placed warning signs on the banks of the stream at the time the weirs were constructed. The signs stated:

>DANGER
>UNDERWATER
>OBSTRUCTION 500 FT.
>HAZARDOUS UNDERTOW
>TURBULENT WATER

(Government's Response to Plaintiff's Interr. No. 8). The letter sent to Mr. Hudson, *supra*, acknowledged that the Corps of Engineers had previously placed and maintained signs at the weirs. In the letter, the Government informed the Levee District that, "There are a number of weirs in your project streams which have the potential for damage claims from any individual who might be injured while attempting to navigate the stream. ... It is our opinion that you could best reduce your liabilities by posting proper signs at each weir to warn of the possible hazard. ...

9

[W]e offer to you the use of any signs that remain on-site without cost."

The above warnings say nothing about a danger of entrapment by the structure of the weir itself. While one of Plaintiffs' experts, Dr. Sissom, expressed the opinion that the above signs were inadequate, he did so in part precisely because the entrapment danger was not pointed out by the warnings. Thus, nothing in the language of the original signs proves that the defendants were aware of the entrapment danger.

In response to motions in limine filed by the defendants, the undersigned has ruled that the opinions of plaintiffs' experts regarding modifications to the weir structure are not admissible because they are not based on sufficient facts or testing. However, it should be noted that even if they were otherwise admissible, Dr. Sissom's opinions regarding feasible alternative designs and the need for additional warnings are based on a factually unsupported assumption that the defendants had notice that the support structure for the weir created the dangerous condition complained of by the plaintiffs. Thus, even if his opinions regarding alternative design of the weir structure were admissible, and to the extent that his opinions regarding the adequacy or inadequacy of the warning signs are admissible, there is simply no factual, scientific, or statistical basis for any belief that the defendants knew or should have known of the entrapment danger, and his opinions are irrelevant as they relate to any claim for which notice is an element of proof.

Although the plaintiff cites the use of concrete to fill openings in other weirs, this was done for structural not safety reasons, and it is not evidence of notice. While the plaintiffs allege that the defendants, despite performing periodic inspections of the weir, failed to conduct any "safety inspections," they have not shown how an inspection would have put the defendants on

notice of a defect in the weir. There is simply no record of any prior accidents, warnings, or complaints that would have alerted the defendants to the openings during a periodic inspection. The plaintiffs contend that, based on witnesses' testimony that boaters and fishermen would occasionally fish off of the weir, the defendants should have anticipated that people might become entrapped in the weir. The fact that the authorities were aware that people occasionally fished off of the weirs does not translate into a conclusion that the defendants knew or should have known of the danger of entrapment created by it.

The evidence also shows that the plaintiff's decedent was familiar with the area in question, that he knew of the weir's existence and location, and that he was aware that he was on the weir before he exited his boat. (Deposition of Oliver Douglas, Exhibit D attached to Document No. 11, p. 8, lines 8-12; p. 17, line 25; p. 18, lines 1-2, 21-25; p. 19, lines 1-17; pp. 21-23; p.27, lines 18-23) In addition, the original signs were not visible after dark, and it is undisputed that this accident occurred during hours of darkness. Thus, any failure to maintain the signs in their original condition did not cause the accident.

Finally, the evidence in the record of this case shows that weirs of the type involved in this case exist all over the United States, and have done so for at least 30 years. There is no evidence that there has ever been another accident of the type which occurred in this case in all of those years. (Affidavit of John Calvin Stringer, Exhibit "C," Design Memoranda, Government Exhibits "B" and "C," Affidavit of Daniel A. Johnson, Government Exhibit "D," and Declaration of Henry H. Black, Government Exhibit "E," attached to Document No. 29) In fact, neither the plaintiffs' decedents' companion nor the authorities called in to look for Thomas Poindexter even thought of looking directly under the weir for his body for several hours after he fell. Instead,

they very reasonably assumed that he had been swept over the weir and down the creek by the current. (Deposition of Oliver Douglas, pp. 30-34; Depositions of Scott Watson and Richard A Owens and Accident Report attached thereto, Plaintiffs' Exhibits "17" and "17A," attached to Memorandum in Opposition to Motion for Summary Judgment). In short, nothing in the record of this case shows that the defendants were or should have been aware of the danger encountered by Thomas Poindexter in this most tragic accident.

In the absence of notice, any claim against the defendants under La. C. C. Art 2317 or 2317.1 for failure to maintain the signs or correct the allegedly dangerous condition created by the weir must fail. **It is therefore recommended that the defendants' motions for summary judgment on this basis be GRANTED**.

### Federal Tort Claims Act, 28 U.S.C. § 2671-2680, Discretionary Function Exception

The Government also moves for Summary Judgment (Doc. # 27) based upon the discretionary function exception to the Federal Tort Claims Act. The Government maintains that it is immune from Plaintiffs' claims and from the Levee District's Third Party Demand.

Plaintiffs and the Levee District, in their oppositions to the motion, argue that while the Government had discretion in whether to place a weir in Big Creek, once it built the weir, the Government had a non-discretionary duty to maintain and inspect the weir. (Plaintiff's Memo in Opp. Doc. # 38 , Levee District's Memo in Opp. Doc. # 35).

In *United States v. Varig Air Lines,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the United States Supreme Court held that the defendant agency was exercising a discretionary function in its certification and inspection of an airplane, noting as follows: "When an agency

12

determines the extent to which it will supervise the safety procedures of private individuals it is exercising discretionary regulatory authority of the most basic kind."

The Fifth Circuit Court of Appeals, in *Wysinger v. U.S.*, 784 F.2d 1252, *1253 -1254 (5th Cir. 1986), a wrongful death case, held that there could be no liability against the Forest Service, reasoning as follows:

> Since appellant's wrongful death claim is based upon failure to have a life guard at the site, the attempt to recover under the Federal Tort Claims Act must fail because the governmental decision not to have a life guard at the site fell in the "discretionary function" exception to jurisdiction under the Federal Tort Claims Act. Only if there had been a life guard on duty who acted negligently or the government had negligently failed to warn of dangers at the swimming site would there be jurisdiction under the Federal Tort Claims Act.

In a later case, *United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the Supreme Court held that it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case. Thus, the basic inquiry concerning the application of the discretionary function is whether the challenged acts of a Government employee, whatever his or her rank, are of the nature and quality that Congress intended to shield from tort liability.

A number of cases hold that once the government undertakes to furnish a service, the government can be held liable for negligence in providing that service. *E.g., Rise v. United States,* 630 F.2d 1068 (5th Cir.1980) (providing medical care); *Butler v. United States,* 726 F.2d 1057 (5th Cir.1984), (leaving a dangerous condition the government created while engaged in dredging operations over a period of time). If the government creates the danger after the critical discretionary decision has been made, it can have liability. *Wysinger,* 784 F.2d at 1253.

13

In *Wiggins v. U.S. Through Dept. of Army*, 799 F.2d 962, *966 -967 (5th Cir.1986), the court found that the Corps of Engineers made a discretionary decision not to remove the pilings in Flat Lake. It was uneconomical to do so and other natural obstructions in the lake created as much hazard as did the pilings. The court held that the quality of this decision was exempt from challenge under the discretionary decision exception and that once that decision was made, the government did nothing which created any additional hazard or danger to the plaintiff or her deceased husband. Thus, the *Indian Towing* rule did not apply because the government did not act in any way negligently toward the plaintiff after the original discretionary decision not to remove the pilings had been made, and that original decision was exempted from a negligence analysis as discretionary. *Wiggins v. U.S. Through Dept. of Army*, 799 F.2d 962, *966 -967 (5th Cir.,1986)

In this case, the same reasoning applies. The defects complained of by the plaintiffs are the failure to warn of the danger of entrapment, and the failure to cover the support structure in such a way as to eliminate the entrapment risk. Both of these alleged defects were within the discretionary decisions made in connection with the original design and construction of the weir. The plaintiff has supplied no evidence to show that the government did anything thereafter that created any additional hazard or danger to the decedent. Therefore, even assuming that notice is not an element of the plaintiffs' claim against the government because of the government's role in designing and constructing the weir and the original warning signs, the government is immune from liability because the original design and construction of the weir and the warning signs fall within its discretionary functions. Accordingly, it is recommended that the Government's Motion for Summary Judgment for immunity under the discretionary function exception (Doc. #

27) be **GRANTED**.

## Immunity Under Flood Control Act of 1927, 33 U.S.C. § 702c

The Government also filed a Motion for Summary Judgment (Doc. # 28) claiming that the United States is immune from suits alleging liability in the management, construction, and/or maintenance of flood control projects under the Flood Control Act of 1927, 33 U.S.C. § 702c. Plaintiffs and the Levee District oppose, (Docs. # 36 & 38) claiming that a genuine issue of material fact exists about whether Thomas drowned in "flood waters" and also whether the weir involved is a flood control structure.

The pertinent language of § 702c is that "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." Damage encompasses personal injuries and death, as well as property damage. *See United States v. James*, 478 U.S. 597 (1986). "In determining whether § 702c immunity attaches, courts should consider the character of the waters that cause the relevant damage rather than the relation between that damage and a flood control project." *Central Green Co. v. U.S,* 531 U.S. 425, 437 (2001). "The text of the statute directs us to determine the scope of the immunity conferred, not by the character of the federal project or the purposes it serves, but by the character of the waters that cause the relevant damage and the purposes behind their release." *Id.* at 434. Accordingly, the question on whether immunity applies under the Flood Control Act depends on whether the weir was being used to control flooding on May 11, 2003. However, based on the record as it now stands there is no basis for a finding that the weir was being used to control flooding on that date, and it is therefore recommended that the Motion for Summary Judgment based on

immunity under the Flood Control Act be **DENIED**.

## Indemnity

The United States also seeks an entry of judgment declaring that it is fully indemnified by the Levee District for any damages the Defendants are found liable because of the Assurance entered into on October 11, 1956. In relevant parts, the Assurance states that the Levee District "agrees to maintain the completed works" and "will hold and save harmless the United States of America from all damages resulting from the construction, maintenance, and operation of the project." In their brief, the Government cited cases where indemnification was granted, despite negligence on behalf of the indemnitee. *See United States v. M.O. Seckinger*, 397 U.S. 203 (1970); *Smith v. United States*, 497 F.2d 500 (1974); *Gibbs v. United States*, 599 F.2d 36 (2d Cir. 1979). However, the Levee District argues that indemnification should not be granted because "genuine issues of fact exist regarding the degree of control the United States of America maintains over the project in question and whether that control renders the assurance moot." (Levee District's Opp. to MSJ Doc. #36). The Levee District relies on *Butler v. United States*, 726 F.2d 1057 (5th Cir. 1984). In *Butler*, the Court found that the County agreed to indemnify the Government even if the Government was negligent. However, the Court denied indemnification because the Government had retained control and supervision of the area. *Id.* at 1065. "While one may contract to indemnify one's own negligence, we hold as a matter of public policy that an indemnitee may not enforce such an indemnity contract where the indemnitor is prevented by the indemnitee from properly relieving or warning of a hazardous condition caused by the indemnitee's negligence." *Id.* at 1065-1066. "Responsibility without control results in the inequity of liability without fault, which we refuse to find." *Id.*

16

The Levee District argues that the Government inspects and maintains the weirs (Stringer Aff. Exhibit B to Doc. #11). In 1978, the Government spent $158,157.75 repairing the weirs on Big Creek. (Plaintiffs Opp. to MSJ Doc. #36 Ex. A). This was six years after the weir construction was completed. In addition, the Government admits that "the weir in question is inspected annually by Agency personnel." (Plaintiffs Opp. to MSJ Doc. #36 Ex. A). The facts currently before the Court do not show whether the Levee District was precluded from acting because of the Government's actions. **Therefore, as there are genuine issues of material fact regarding these points, it is recommended that the Government's Motion for Summary Judgment on the issue of indemnity be DENIED.**

## Conclusion

For the reasons stated above, it is recommended that the motion for summary judgment on the basis of Flood Control Act Immunity and on the issue of indemnity (Document No. 28) be **DENIED**; but that the motions for summary judgment on the basis of lack notice of any defect (Document Nos. 11 and 29) and the government's motion for summary judgment on the basis of Discretionary Function Immunity (Document No. 27) be **GRANTED and this matter be dismissed with prejudice in its entirety.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of

filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 9th day of December, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE