## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| **DEBORAH M. POINDEXTER, ET AL.** | * | **CIVIL ACTION NO. 04-1035** |
| **VERSUS** | * | **JUDGE JAMES** |
| **UNITED STATES OF AMERICA THROUGH THE CORPS OF ENGINEERS** | * | **MAGISTRATE JUDGE HAYES** |
| | | **(consolidated with)** |
| **DEBORAH M. POINDEXTER, ET AL.** | | |
| **VERSUS** | | **CIVIL ACTION NO. 04-1158** |
| **BOARD OF COMMISSIONERS OF THE TENSAS BASIN LEVEE DISTRICT** | | |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge is a motion for summary judgment [doc. # 108] filed by defendant, Board of Commissioners of the Tensas Basin Levee District ("Levee District") and joined in by defendant, the United States of America ("the government") [doc. # 112]. The district court referred the motion to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons stated below, it is recommended that the motion for summary judgment [doc. # 108] be **DENIED**.

### Background

The plaintiffs in this case are the surviving sons and spouse of Thomas Wayne Poindexter. They brought a wrongful death and survival action following his drowning death in Big Creek on May 11, 2003.

The drowning occurred in an area of Big Creek where the water level is controlled by a series of weirs. The weirs consist of a wall of corrugated steel running from one bank of the creek to the other and into the creek bed. On the upstream side of the wall is a layer of riprap or rocks that add structural support to the wall and

>reduce erosion. On the downstream side of the wall is a horizontal steel brace, known as a wale, that runs the length of the weir approximately 13 inches below the top edge. Multiple openings are present between the wale and the wall along the length of the weir.
>
>Poindexter was at Big Creek to go jug fishing with his brother-in-law, Oliver Douglas. It was after midnight when they left the boat dock to retrieve jugs that had been set out by Poindexter and his wife earlier that day. The water was calm but a significant rainfall had occurred the night before and there was a strong current of approximately 10 to 14 inches of water flowing over the weir that night.
>
>One of the jugs they wanted to retrieve appeared to be on or near the weir. As they approached it, the boat propeller became lodged in the rocks of the riprap. Poindexter and Douglas exited the boat to try to walk the boat to the bank. According to the magistrate's report at this point "the boat broke free and went over the weir, Thomas [Poindexter] slipped, was knocked over by the boat, and/or lost his balance and fell, disappearing from sight over the edge of the weir." The plaintiff alleges that as Poindexter and Douglas exited the boat, "they encountered the swift current around the weir, which caused Thomas [Poindexter] to either slip or lose his balance." After Poindexter went over the weir, he became entangled in a corrugated opening of the weir, broke his leg and was trapped under the water, causing his death by drowning.

*Poindexter v. United States*, 244 Fed. Appx. 561 (5th Cir. Jul. 23, 2007) (unpubl.).

Plaintiffs filed suit against the Levee District on December 26, 2003, in the Fifth Judicial District Court for the Parish of Richland, State of Louisiana. On January 29, 2004, the Levee District filed a third-party demand against the United States. Plaintiffs then filed a separate suit in federal court against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346. On May 26, 2004, the United States removed the state court suit to federal court whereupon the cases were consolidated. (August 4, 2004, Order).

Plaintiffs contend that defendants are liable for damages under Louisiana Civil Code articles 2315, 2317, and 2317.1 because the weir constituted an unreasonably hazardous condition. Between March and June 2005, defendants filed several motions for summary judgment seeking dismissal on various grounds. (*See*, doc. #s 11, 27, 28, & 29). In a December 9, 2005, Report and Recommendation, the undersigned recommended that plaintiffs' claims be

2

dismissed due to defendants' lack of notice of any defect and on the basis of the government's discretionary function immunity. On April 6, 2006, the district court concurred with the report's findings and dismissed p]laintiffs' claims effectively due to defendants' lack of actual or constructive notice of the particular danger encountered by Poindexter. (*See*, April 6, 2006, Judgment). However, the district court denied as moot the government's additional bases for summary judgment, including discretionary function immunity. *Id*.

Plaintiffs appealed the adverse judgment to the United States Court of Appeals for the Fifth Circuit. In a July 23, 2007, decision, the court held that,

> [a]s applied to this case, the unknown risk of becoming entrapped in the weir after encountering the known risk of being swept over the weir by turbulent water is within the scope of the defendants' duty. Mr. Poindexter's injury and drowning is easily associated with the foreseeable risk. In other words, if the defendants had a duty to protect recreational users of Big Creek from the known dangers of the weir - being swept over the weir by strong or turbulent currents and drowning - then the risk that a person swept over the weir would drown by entrapment is covered by that same duty. Summary judgment is inappropriate in this case on the grounds relied on by the district court.

*Poindexter, supra*.

Accordingly, the court reversed the district court judgment and remanded the matter for further proceedings. *Id*.

In an April 9, 2008, Memorandum Order, the district court granted defendants an extension of time until May 9, 2008, to file one dispositive motion each addressing

1. Whether the risk posed an unreasonable risk of harm in general;

2. Whether the risk posed an unreasonable risk of harm to Mr. Poindexter;

3. Whether defendants had a duty to warn people in general of the risk;

4. Whether defendants had a duty to warn Mr. Poindexter of the risk; and

5. Whether the alleged failure to warn of the risk was the legal cause of

3

harm

and any other liability issues raised in defendants' prior motions for summary judgment [doc. #s 29 & 11].  (April 9, 2008, Memorandum Order).

On May 14, 2008, the Levee District filed the instant motion for summary judgment.  The motion sought dismissal of p]laintiffs' claims because 1) the Levee District did not have a duty to warn Poindexter regarding a hazard that was open and obvious to Poindexter; 2) the Levee District's alleged failure to warn was not a cause-in-fact of Poindexter's death; 3) the Levee District was entitled to assert Recreational Use Immunity as set forth in La. R.S. 9:2795; and/or 4) the Levee District was immune from suit under the policymaking or discretionary acts or omissions of public entities under La R.S. 9:2798.1.  (*See*, doc. # 108).  On May 16, 2008, the district court granted leave of court for the government to join in grounds one and two of the Levee District's motion.  (May 16, 2008, Order).

Meanwhile, in a May 15, 2008, letter to the court, plaintiffs' counsel represented that plaintiffs had settled all claims and causes of action against the Levee District.  (May 15, 2008, letter; doc. # 110).  Accordingly, the instant motion for summary judgment is moot as to the Levee District; therefore, solely the first two bases of the motion as adopted by the government remain viable.  On May 21, 2008, the district court referred the motion for summary judgment to the undersigned for report and recommendation.  (May 21, 2008, Electronic Order).  Following a delay for briefing, the matter is now ripe.

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a

matter of law. F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence such that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely upon the allegations and conclusions contained within the pleadings; rather, the movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## Analysis

In accordance with the Federal Tort Claims Act, the United States is subject to liability only under circumstances where a private person would incur liability pursuant to the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b). The accident occurred in Louisiana; thus, the court must apply Louisiana law.

Plaintiffs contend that the government's negligence caused their damages. (Petition, ¶

22).[1]  To determine whether a plaintiff should recover on a negligence claim, Louisiana courts employ a duty-risk analysis.  *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted).  Under the duty-risk analysis, plaintiff must establish five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id*.[2]

In its duty-risk analysis, the court should identify "(1) the duty imposed upon the defendant by statute or rule of law and (2) the conduct by defendant that allegedly constituted a breach of that duty."  *Id*.  Stated another way, negligence by a thing's owner is established with proof that "something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing."  *Teel v. State, Dept. of Transp. and Development*, 681 So.2d 340, 343 (La. 1996) (quoted source and

---

[1]  Under Louisiana law, the applicable sources for delictual liability are found in Civil Code Articles 2315 and 2317.  Under either article, plaintiffs' burden of proof is now the same.  *See*, *Dupree v. City of New Orleans*, 765 So. 2d 1002, 1007 n.5 (La. 2000).  Civil Code Article 2317.1, enacted in 1996, "abolished the concept of strict liability" that existed in Louisiana under the pre-1996 version of Article 2317.  *Broussard v. Voorhies*, 970 So. 2d 1038, 1042 (La. App. 1st Cir. 2007), writ denied, 970 So.2d 535 (La. 2007).  Before the 1996 amendments, the "sole distinction between the burden of proof necessary to recover under a negligent action . . . versus a strict liability action . . . was . . . proving the defendant's scienter."  *Lasyone v. Kan. City S. R.R.*, 786 So. 2d 682, 689 n.9 (La. 2001); *Dupree, supra*.  Article 2317.1 "eliminated that distinction."  *Lasyone*, 786 So. 2d at 689 n.9; *Dupree*, 765 So. 2d at 1007 n.5.

[2]  The Fifth Circuit appears to have answered the fourth element in this case.  *See*, discussion, *supra*.  The fifth element -- damages, is not at issue.

emphasis omitted). The court must decide which risks are unreasonable in accordance with the facts and circumstances of the case. *Pitre v. Louisiana Tech University*, 673 So.2d 585, 590 (La. 1996) (citation omitted). Whether a given risk is unreasonable "requires a balance of the intended benefit of the thing with its potential for harm and the cost of prevention." *Id*. The determination of whether a particular risk of harm is reasonable is tied to the facts of the case, and is best left to the trier of fact after a trial on the merits. *Sevin v. Parish Of Plaquemines*, 901 So.2d 619, 622 (La. App. 4th Cir. 2005) (citing *Celestine v. Union Oil Co. of California*, 652 So.2d 1299, 1304 (La. 1995)).

In the case *sub judice*, plaintiff now concedes that the weirs on Big Creek are not defective in design, and that there was no way to "design out" the unique hazards presented by the weir structures. (*See*, Pl. Opp. Memo., pg. 113). Instead, plaintiff contends that the government "had a duty to place appropriate warning signs notifying the public . . ." of the hazards posed by the weir. *Id*. In this regard, the Louisiana Supreme Court has recognized that a "public authority must provide adequate warnings of unusual obstructions or perilous conditions so as to make the route reasonably safe for those traveling on it." *Faucheaux v. Terrebonne Consol. Government*, 615 So.2d 289, 293 (La. 1993). Moreover, "a public body charged with maintaining a public route cannot claim lack of knowledge of the need to provide warnings where the danger is obvious and inherent in the design and construction of the facility." *Id*.[3] Nonetheless,

> the obviousness and apparentness of a potentially dangerous condition are

---

[3] The person or entity that has garde or custody of a thing has the legal duty to prevent it from harming another. *See, King v. Louviere*, 543 So.2d 1327, 1328-1329 (La. 1989). Whether the United States had garde of the weir is a disputed issue of fact. *See*, December 9, 2004, Report and Recommendation.

>relevant factors to be considered under the duty-risk analysis. If the facts of a particular case show that the complained of condition *should be obvious to all*, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff.

*Pitre*, 673 So.2d at 591 (emphasis added).

Here, there is evidence that the United States recognized the hazards and potential damage claims posed by the weirs on Big Creek. (*See*, February 24, 1993, Letter from U.S. Army Corps of Engineers; Pl. Exh. 3). The government's expert, Phil Combs, Ph.D., a former government employee, admitted that weirs were dangerous and that he was aware of many drownings occurring at weir structures around the country. (Combs Deposition, pgs. 57-59; Pl. Exh. 2).[4] Moreover, Combs had no reason to believe that Poindexter and Douglas (and by extension the general public) were aware of the specific hazards posed by weirs. *See*, Combs Depo. at pgs. 61-62.[5] The government's failure to post and/or maintain adequate warning signs may demonstrate that it breached its duty of reasonable care. *Faucheaux, supra*. Nevertheless, the government contends that it did not owe a duty of care to Poindexter because he was personally aware that the weir posed a drowning risk.

In *Murray v. Ramada Inns, Inc.*, the U. S. Court of Appeals for the Fifth Circuit called upon the Louisiana Supreme Court to decide whether assumption of the risk serves as a total bar to recovery by a plaintiff in a negligence case, or whether it only reduces plaintiff's recovery under comparative fault principles. *See, Murray v. Ramada Inn, Inc.*, 821 F.2d 272 (5th Cir.

---

[4] In *Bingaman v. Kansas City Power & Light Co.*, the parties agreed that a "weir is the type of low-head dam that creates one of the most dangerous water hazards in moving waterways." *Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 978 n.4 (10th Cir. 1993).

[5] Although there is evidence that the general public was not aware of the latent risks created by weirs, this does not preclude the trier of fact in this case from finding that the weir, which is essentially a man-made dam and waterfall, presents an open and obvious hazard to be avoided by all recreational users of the waterway.

1987). The Louisiana Supreme Court accepted the certification and decided that assumption of the risk did *not* serve as a total bar to a plaintiff's recovery in a negligence case. *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123 (La. 1988).

The facts in *Murray* bear a strong resemblance to the facts at hand. In *Murray*, the plaintiffs' decedent, Gregory Murray, suffered paralysis and eventual death after he dove into a motel pool and struck his head on the bottom. *Murray*, 521 So.2d at 1123. The decedent's brother testified that Gregory knew how to dive and that Gregory had cautioned him that shallow water diving was dangerous. *Id*. Moreover, Gregory knew that the pool was shallow because he dove twice without incident, and warned his family to be careful while diving into the pool. *Id*.[6]

The court rejected assumption of the risk as a bar to recovery, stating that

> [i]t cannot be seriously contended that Murray, by attempting to dive into the shallow end of the pool, consented to the risk that he would suffer a fatal blow to his head on the bottom of the pool, and thus agreed in advance to relieve the defendants from liability for his injury. To the contrary, it is obvious from the record that Murray thought that he could safely dive into the shallow end of the pool, an assumption on his part which turned out to be a grave mistake.

*Murray*, 521 So.2d at 1135.

The court further rejected the defendant's argument that its duty should be defined in terms of plaintiff's actual knowledge. *Id*. at pg. 1136. The court emphasized that "[a] defendant's duty should not turn on a particular plaintiff's state of mind, but instead should be determined by the standard of care which the defendant owes to all potential plaintiffs." *Id*. (citing Robertson, *Ruminations on Comparative Fault, Duty-Risk Analysis, Affirmative Defenses, and Defensive Doctrines in Negligence and Strict Liability Litigation in Louisiana*, 44 La. L. Rev. 1341, 1378 (1984)). The court concluded that the assessment of plaintiff's awareness of the risk of injury is

---

[6] A sign near the pool stated "NO LIFE GUARD-SWIM AT OWN RISK." *Id*.

made after defendant's fault has been established and is governed by principles of comparative fault under Civil Code Article 2323. *Id*. Subsequent supreme court cases reaffirm the *Murray* decision. *See*, *Socorro v. City of New Orleans*, 579 So. 2d 931 (La. 1991) (plaintiff's knowledge and conduct cannot be used to find that defendant did not owe a duty);[7] *Pitre v. Louisiana Tech University*, 673 So.2d 585 (La. 1996) (cited *Murray* extensively).[8]

It is manifest that the government's initial argument is foreclosed by *Murray*. It argues that plaintiff was aware of the weir and its hazards, yet unsuccessfully "gambled" that he could safely retrieve his wayward fishing jug.[9] The United States thus concludes that the weir did not present an unreasonable risk of harm to Poindexter. However, the instant circumstances are not appreciably distinct from Gregory Murray's fateful decision to engage in shallow water diving

---

[7] The court cautioned, however, that it maintained its policy that "the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably dangerous." *Id*. at pgs. 941-942 (citations omitted).

[8] In *Pitre*, the court found that a light pole in a parking lot did not present an unreasonable risk of harm to sledders on a nearby hill because the complained of condition was obvious to all. *Pitre, supra*.

[9] The government adduced evidence that Poindexter and his brother-in-law, Douglas, knew that they were approaching the weir before the accident because they could hear the water rushing over the weir and see the milk jug bobbing close to the weir. (Douglas Depo., pgs. 43-44; Pl. Exh. 4). Douglas further stated that he and Poindexter could tell that the current was strong and that the water level was high by the sound of the water going over the weir. *Id*. at pgs. 52-53.
  Poindexter's son, Brandon, testified that his father had told him that "the current was real strong because the water level was a lot lower close to the weir." (Brandon Poindexter Deposition, pgs. 6-7, Pl. Exh. 7). Poindexter's other son, Marshall, testified that his father was aware of the three weirs on Big Creek. (Marshall Poindexter Deposition, pg. 8; Pl. Exh. 8). Marshall further stated that ever since he had been small, his father told him about the strong currents near the weir and to stay away from it. *Id*. at pgs. 10-11.
  When asked whether Poindexter had ever been on the weir before, Deborah Poindexter stated that he knew it was there, "but undoubtedly he didn't see it, because he was no dummy." (Deborah Poindexter Deposition, pg. 34, Def. Exh. E). One interpretation of Ms. Poindexter's statement is that she believed that Poindexter knew better than to willingly approach the weir.

despite his awareness of the risks involved. *Murray, supra*. Here, the government has essentially asked the court to apply assumption of the risk "through the back door." This, we cannot do. *Murray, supra*.[10]

---

[10] Cases cited by the government do not compel a different result. In *Celestine v. Union Oil Co. of California*, the plaintiff sued the owner of an offshore oil platform after he was injured by a falling railing that he had been hired to repair. *Celestine, supra*. In deciding whether the railing posed an unreasonable risk of harm, the court considered the plaintiff's personal awareness of the hazards posed by the railing in question, but emphasized the significance of plaintiff's status as a repairman and the platform owner's interest in repairing the handrail to maintain workplace safety. *Celestine, supra*.

The *Celestine* court relied heavily upon Judge Rubin's decision in *Ladue v. Chevron*, U.S.A., Inc., 920, F.2d 272 (5th Cir. 1991). As in *Celestine*, the plaintiff in *Ladue* was injured when a grating that he had been hired to repair, gave way. *Ladue, supra*. In finding that the grating did not pose an unreasonable risk of harm to a repairman such as Ladue, the court recognized the social and economic importance of a building owner's ability to remedy unsafe conditions on the premises. *Id*. The *Ladue* court stated that reasonableness is considered "vis-a-vis the plaintiff and those similarly situated." *Ladue*, 920 F.2d at 277 (citing *Murray*, 521 So.2d at 1136 ("defendants owed a duty to all potential users of the pool ")).

The government cited *Thibodaux v. McWane Cast Iron Pipe Co.*, for the proposition that under Louisiana law a duty to warn does not exist where the victim is already aware of the danger. *Thibodaux v. McWane Cast Iron Pipe Co.*, 381 F.2d 491 (5th Cir. 1967). However, to the extent that *Thibodaux* implies that a plaintiff's actual awareness of a risk influences whether the risk posed an unreasonable risk of harm, this appears to have been superceded by subsequent developments in Louisiana law. *See e.g., Murray, supra*.

The government also cited *Stiebing v. Romero*, 974 So.2d 752 (La. App. 5th Cir. 2007). In *Stiebing*, the plaintiff was hired by homeowners to help gut their home post-Hurricane Katrina. *Id*. Plaintiff sued the homeowners for injuries that she sustained after falling off of an unstable nightstand. *Id*. Despite noting that plaintiff was aware of the possibility that the nightstand was unstable, the court found that the homeowners did not breach their duty of care because the danger was self-evident to post-Katrina workers such as plaintiff. *Stiebing*, 974 So.2d at 757. In other words, the risk of harm was open and obvious to all similarly situated persons.

In *Ardoin v. Lewisberg Water System*, the plaintiff sued the water company after she tripped over a water meter cover while walking down a path that she regularly traversed at her apartment complex. *Ardoin v. Lewisberg Water System*, 963 So.2d 1049 (La. App. 3d Cir. 2007). Although the court found that the meter covers were not unreasonably dangerous because they were obvious to plaintiff, the court also correctly cited the law that a defendant does not owe a duty to protect against a risk of harm that is open and obvious to all. *Id*.

The undersigned submits that cases which discuss plaintiff's awareness of the risk of harm in conjunction with the duty owed by defendant are best understood as imprecise efforts by the courts to demonstrate that the complained-of condition was open and obvious to all similarly situated plaintiffs. For a discussion of victim fault and case law potentially at odds with *Murray,*

The government alternatively argues that any failure to warn on its part was not a cause-in-fact of Poindexter's tragic accident. Generally, cause-in-fact is the outset determination in the duty-risk analysis. *Boykin v. Louisiana Transit Co., Inc.*, 707 So.2d 1225, 1230 (La. 1998) (citing *Pierre v. Allstate Ins. Co.*, 257 La. 471, 242 So.2d 821 (1970)). "Cause-in-fact usually is a 'but for' inquiry which tests whether the accident would or would not have happened but for the defendant's substandard conduct." *Id*. When there are concurrent causes of an accident, the proper inquiry is whether the conduct at issue was a substantial factor in precipitating the accident. *Id*.

Professor Robertson has articulated five steps to simplify the "mental gymnastics" involved in the cause-in-fact analysis. *See*, Galligan, 58 La. L. Review at 43 (citing Robertson, *The Vocabulary of Negligence Law: Continuing Causation Confusion*, 58 La. Law Review 1 (1997)). Professor Galligan summarized the steps as follows: "(1) identify the injury; (2) identify the wrongful conduct; (3) correct the conduct; i.e., make the wrong right; (4) ask whether the plaintiff would have still been hurt if the defendant hadn't done what it (allegedly) did wrong; and, (5) finally, answer the question just asked." *Id*.

Applying the instant facts to the foregoing steps, the undersigned observes that the injury is Poindexter's entrapment in the weir and resulting death. According to plaintiffs, the government's wrongful conduct was its failure to post and/or maintain adequate sign(s) to warn the public about the dangers posed by the weir. Assuming that the government had maintained and/or placed adequate warning sign(s), the question then posed is whether Poindexter would have become entrapped in the weir.

---

*supra*, see Galligan, *Cats or Gardens: Which Metaphor Explains Negligence? Or, Is Simplicity Simpler Than Flexibility?*, 58 La. L. Review 35, 65 (1997).

Warning signs by nature are often implemented to influence specific behavior or activity. Poindexter and Douglas made at least two decisions on the night in question which are causally related to Poindexter's death. First, they decided to approach the weir, despite evidence that they knew the weir was there. Second, they decided to exit the boat after they became stranded on the weir. It is unlikely that any warning sign would have persuaded them to remain in the boat once they became stranded on the weir. According to Douglas one foot of the boat was suspended in the air past the weir. (Douglas Depo., pg. 21). They were afraid that the boat was going to go over the side. *Id.* at pg. 22. Thus, if the two had elected to stay in the boat, they would have had to maintain their precarious position for six or more hours until morning (and beyond) in the hope that someone would stumble across them and effect a rescue.

Instead, the focus must be upon Poindexter's decision to approach the weir in the first place and whether a warning sign would have materially influenced that decision.[11] In this regard, plaintiff emphasizes that prior to 1993, the government had placed and maintained

---

[11] Thus, Poindexter's own knowledge and tendencies become paramount and relevant to the cause-in-fact inquiry. *See e.g., Philippe v. Lloyd's Aero Boliviano*, 710 So.2d 807, 809-810 (La. App. 1st Cir. 1998) (plaintiffs were required to show more likely than not that they would have refused to travel to La Paz had they known of the risk of altitude illness); *Archon v. Union Pacific R.R.*, 657 So.2d 987 (La. 1995) (no reason to believe that plaintiff would not have acted with due regard for his own safety and heeded any flashing lights or other warning devices; thus defendant's failure to heed its own mandate to install flashing lights was a cause-in-fact of plaintiff's death); *Vargas v. Continental Cuisine, Inc.*, 900 So.2d 208, 211 (La. App. 4th Cir. 2005) (defendant's failure to warn was not cause-in-fact of plaintiff's injury where plaintiff stated that he never looked at the places where the warnings would have been posted); *Wilkerson v. Kansas City Southern Ry.*, 772 So.2d 268, 280 (La. App. 2d Cir. 2000) (inadequate train warnings were not cause-in-fact of plaintiff's fatal accident where she was talking on her cell phone); *Corbello v. Southern Pacific Transp. Co.*, 586 So.2d 1383 (La. App. 3d Cir. 1991) (failure to maintain a crossbuck sign was not cause-in-fact of plaintiff's accident because plaintiff knew that the train track was there); and *Nix v. Brasly*, 489 So.2d 1038, 1042 (La. App. 1st Cir. 1986) (defendant's failure to display "Ice on Bridge" was not cause-in-fact of the accident when plaintiff was already aware of the danger and the need to proceed with caution).

warnings on Big Creek which stated,

**DANGER**
**UNDERWATER OBSTRUCTION 500 FEET**
**HAZARDOUS UNDERTOW**
**TURBULENT WATER**

In contrast, the government contends that the signs would not have averted the accident because Poindexter was already aware of the weir's location and its dangers. However, under Louisiana law, there is a presumption that a person would have heeded a warning sign. *See, Faucheaux, supra*; *Rick v. State, Dept. of Transp. and Development*, 630 So.2d 1271, 1275 (La. 1994), overruled on other grounds, *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87 (La. 2005).[12] Moreover, plaintiffs have adduced evidence that neither Douglas nor Poindexter believed that they were in any danger while on, or near the weir structure. (Affidavit of Oliver Douglas, Pl. Exh. 1). Douglas further averred that had the afore-mentioned sign been posted on Big Creek he would have avoided the weir. *Id*.[13] He added that he and Poindexter would have complied with any warning to keep off the weirs. *Id*. Poindexter's sons averred that their father was a safety-conscious person, and that he obeyed warnings and safety instructions. (Marshall Poindexter Affidavit, Pl. Exh. 6; Brandon Poindexter Affidavit; Pl. Exh. 5).

In sum, the record contains evidence that Poindexter may have appreciated some risks associated with the weir, but that he may not have appreciated the true extent or nature of those risks. While the warning sign that the government previously maintained did not state, KEEP

---

[12] The law further provides a "rebuttable presumption that a deceased exercised due care under the circumstances, in conformity with the instinct of self-preservation and the love of life." *Carter v. City Parish Government of East Baton Rouge*, 423 So.2d 1080, 1086 (La. 1982).

[13] Of course, since Douglas was a passenger in the boat operated by Poindexter, he would have had to convince Poindexter to either abandon the wayward jug or drop him off ashore. If Douglas succeeded with the former, then the accident would have been avoided.

AWAY or NO BOATING BEYOND THIS POINT, a reasonable trier of fact could find that a properly maintained sign warning of DANGER ahead may have sufficed to dissuade Poindexter from approaching the weir. The cause-in-fact inquiry in this case requires the trier of fact to consider the knowledge and behavioral characteristics of the deceased and determine whether he would have acted differently in response to a properly maintained warning sign or some other version thereof. Reasonable minds need not answer this question uniformly; thus, the question remains an issue for the trier of the fact. *See, Cay v. Louisiana Department of Transportation & Development*, 631 So.2d 393, 395-396 (La. 1994) (cause-in-fact is usually a jury question unless reasonable minds could not differ).[14]

For the above-assigned reasons,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 108] filed by defendant, Board of Commissioners of the Tensas Basin Levee District and joined in by defendant, the United States of America [doc. # 112] be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

---

[14] The docket sheet denotes that this matter is set for a jury trial. However, in its answer filed in Civil Action Number 04-1158, the United States contested plaintiffs' right to a jury trial. Indeed, FTCA cases are to be tried by the court without a jury. 28 U.S.C. § 2402.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 10th day of June, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE